UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL DOCKET NO. 16-26** |
| v. | * | SECTION: "J" |
| **JARVIS HARDY** | * | |
| | * * * | |

**GOVERNMENT'S MEMORANDUM IN OPPOSITION
TO DEFENDANT'S MOTION TO WITHDRAW GUILTY PLEA**

**NOW INTO COURT** comes the United States of America, appearing herein through the undersigned Assistant United States Attorneys, and submits its opposition to defendant Jarvis Hardy's Motion to Withdraw Guilty Plea (the "Motion"). Rec. Doc. 130. Because of clear Supreme Court and Fifth Circuit precedent, and the specific facts of this case, the United States respectfully requests that this Honorable Court deny the Motion.

**PRELIMINARY STATEMENT**

Jarvis Hardy's plea was knowing and voluntary. He was represented by competent counsel who correctly advised him of the then existing penalties should he proceed to trial and be found guilty. During the re-arraignment, the Court fully complied with Rule 11, assessing Hardy's competence, ensuring he understood what he was doing, explaining the rights he was giving up, correctly advising Hardy as to the elements and penalties for each count to which he pleaded guilty, and confirming that Hardy was in fact guilty of the crimes to which he was pleading.

Hardy does not assert his factual innocence as to any count to which he pleaded guilty, nor does he claim that any intervening change in the law changed the mandatory minimum or maximum sentences for the counts to which he pleaded guilty. Rather, he wants to withdraw his guilty plea because he agreed to a 35-year term of imprisonment that looks bad now that the law

changed and the potential mandatory minimum he faced went from 45 years to 25 years. This is not a proper basis to withdraw a knowing and voluntary plea given under oath in open court.

Hardy's exclusive focus on the mandatory minimum sentence ignores that he faced a potential life sentence in a case in which he admittedly shot a police officer. The First Step Act did not change his potential maximum sentence or the facts of this case. Hardy disregards the horrible, tragic injuries he directly caused to DEA Task Force Officer Stephen Arnold. Hardy bears all the fault and responsibility for the situation he found himself in during the early morning hours of January 26, 2016, and for the situation he finds himself in today. His predicament is not the result of a single bad decision or mistake. Instead, Hardy is where he is because of the lifestyle he chose to live. He distributed drugs daily over a period of years from his home, from his vehicle and within his neighborhood. He armed himself with not one, but two firearms to protect his drug supply during the course of his drug trafficking activities. And he willingly fired one of those weapons multiple times to protect his drug stash.

Hardy shot a police officer who was lawfully in his house executing a search warrant based on Hardy's drug trafficking activities. Stephen Arnold was a healthy, functioning individual who dedicated his life to public service in the hopes he could contribute to the greater good of the community. Because of Jarvis Hardy, Stephen Arnold is now in a vegetative state at a nursing home. Stephen cannot move. He cannot feed himself. He cannot do any basic task we all take for granted. Stephen cannot speak. He cannot have conversations with or wrap his arms around his loved ones, including his mom and dad. Stephen often finds himself in and out of the emergency room from complications of his injuries caused by the shooting. Stephen lives only with the support of machines and round the clock care.

In addition to failing to acknowledge the gravity of his crimes, Hardy's motion to withdraw has no basis in law. Hardy's plea was intelligently made. The record clearly shows that at the time of his plea, Hardy was fully aware of what he was doing and the consequences he faced in light of the then applicable law. His knowing plea and valid agreement does not become vulnerable because a subsequent change in the law altered the sentence on a count that was dismissed.

This is not some kind of *sui generis* situation that the courts have never addressed. Quite the contrary. There are numerous cases—from the Supreme Court and multiple Circuits—holding that a subsequent change in law that shifted the calculus in place at the time a defendant accepted a plea does not vitiate a knowing and voluntary plea. Further, as discussed in detail below, none of the seven *Carr* factors that the Fifth Circuit instructs the district courts to evaluate in determining whether to let a defendant withdraw a guilty plea favor allowing withdraw here.

## LAW AND ARGUMENT

### A. Numerous Courts Have Rejected Efforts to Withdraw Knowing and Voluntary Guilty Pleas Based on Subsequent Changes to the Law.

The gist of Hardy's motion is that he negotiated the 35-year plea when the law said that if convicted of the second 924(c) violation in Count 9, he would face an additional 25 years that would run consecutively to all other terms of imprisonment. This was in August 2018. After the First Step Act passed on December 21, 2018, a second 924(c) conviction (in the same indictment) only carries a mandatory minimum of five years imprisonment. However, its maximum penalty of life imprisonment remains the same and the sentence must continue to be imposed consecutively to all other counts. In light of the change, Hardy now thinks that his agreed upon 35-year sentence is too high and contends that he would not have agreed to that sentence without the threat of a 25-year consecutive sentence that no longer applies.

Hardy does not contend that his attorneys incorrectly advised him as to the penalties he faced at trial under the legal rules in place when he pleaded guilty. Rather, he concedes that his attorneys correctly advised him as to the penalties in place at the time of the plea. He also concedes that "the plea appears to have been knowing and voluntary," recognizing that "[t]he Court's plea colloquy with the defendant was detailed and complete." Rec. Doc. 130-1 at 10.[1] Hardy's complaint is that the penalty for the 924(c) count that *was dismissed* as part of his negotiated plea is now lower than it was when Hardy pleaded guilty to other charges. Hardy claims the higher potential sentence was part of his motivation for taking the plea and that the change in the law provides a "fair and just reason" to allow the withdrawal of his guilty plea.

"It is well settled, however, that a change in law cannot render a plea agreement unknowing." *United States v. Morrison*, 852 F.3d 488, 490 (6th Cir. 2017). The leading case is *Brady v. United States*, 397 U.S. 742, 757 (1970). There, when the Court in another case had struck down a statute authorizing a death sentence for kidnapping, a defendant, who had accepted a plea to life imprisonment rather than proceed to trial with the possibility of facing the death penalty, argued that he should be allowed to withdraw his plea. Just like Hardy, that defendant argued that since death (or in Hardy's case, a longer mandatory minimum) was no longer an option and the fear of death (or a longer mandatory minimum) caused him to accept the plea to life, he should be allowed to withdraw the plea. The Court disagreed, holding that the Constitution does not require "that a defendant must be permitted to disown his solemn admissions in open court that he committed the act with which he was charged simply because it later develops that . . . the maximum penalty then assumed applicable had been held inapplicable. . ." *Id.* That a defendant

---

[1] *See*, *e.g.*, *United States v. Guerra*, 94 F.3d 989, 995 (5th Cir. 1996), as corrected (Sept. 25, 1996) (explaining relatively low burden of establishing plea was knowing and voluntary).

4

does not anticipate a future change in the law "does not impugn the truth or reliability of his plea." *Id.*; *see also United States v. Trammell*, 710 F. App'x 225, 225 (5th Cir. 2018) (applying *Brady* to reject motion to withdraw a Rule 11(c)(1)(C) plea based on change in law after plea but before sentencing).

Numerous Circuits have followed *Brady* in rejecting challenges to pleas based on subsequent changes to the law. In *United States v. Bradley*, 400 F.3d 459, 463-64 (6th Cir. 2005), for example, the Sixth Circuit rejected an effort to withdraw a plea in the wake of *Booker* making the guidelines advisory. The Sixth Circuit wrote that "the Court has explained that where developments in the law later expand a right that a defendant has waived in a plea agreement, the change in law does not suddenly make the plea involuntary or unknowing or otherwise undo its binding nature. A valid plea agreement, after all, requires knowledge of existing rights, not clairvoyance." *Id.* at 463; *see also United States v. Haynes*, 412 F.3d 37, 39 (2d Cir. 2005) ("The plea allocution shows Haynes to have been fully informed, competent, free of coercion, and cognizant of his rights at the time of the plea. While ignorance of then-existing rights can invalidate a plea agreement in some cases, ignorance of future rights is unavoidable and not a basis for avoiding a plea agreement."); *United States v. Cortez-Arias*, 425 F.3d 547, 548 (9th Cir. 2005) ("[A] favorable change in the law does not entitle a defendant to renege on a knowing and voluntary guilty plea."); *United States v. Morgan*, 406 F.3d 135, 137 (2d Cir. 2005) ("[T]he possibility of a favorable change in the law after a plea is simply one of the risks that accompanies pleas and plea agreements.").

Hardy fails to cite a single case calling into question the weight of this precedent. Indeed, the cases he cites, Rec. Doc. 130-1 at 6-7, note the "strong presumption that the plea is final and binding." *United States v. Boudreaux*, No. 5:17-CR-361-FL-1, 2018 WL 3785404, at *1

5

(E.D.N.C. Aug. 9, 2018).  They also discuss when a change in law may constitute a "fair and just reason" for withdrawal of a guilty plea.  Notably, as Hardy concedes, this is when the intervening changes modify the criminal law defining the offense such that the conduct underlying the conviction is no longer a crime.  *See* Rec. Doc. 130-1 at 7 (discussing *United States v. Andrade* and *United States v. Knowles*).  That is simply not the case here, where the change in law effected only the mandatory minimum penalty applicable to a count that is to be dismissed per the plea agreement.  The law applicable to the counts of conviction has not changed at all.  It is still against the law to conspire to distribute drugs (Count 1); to distribute drugs (Counts 2-5); to possess drugs with the intent to distribute (Count 8); and certainly to discharge a firearm in furtherance of a drug trafficking crime and crime of violence (Count 7).

**B.   The *Carr* Factors Favor Denial of the Motion.**

"A defendant does not have an absolute right to withdraw [his] guilty plea." *United States v. Powell*, 354 F.3d 362, 370 (5th Cir. 2003) (citing *United States v. Brewster*, 137 F.3d 853, 857 (5th Cir. 1998)).  However, "a district court may, in its discretion, permit withdrawal before sentencing if the defendant can show a 'fair and just reason.'" *Brewster*, 137 F.3d at 857 (citing former FED. R. CRIM. PRO. 32(e), which is now located at Rule 11(d)(2)).  "A district court's denial of a motion to withdraw a guilty plea is reviewed for abuse of discretion."  *Powell*, 354 F.3d at 370; *see also United States v. Mann*, 161 F.3d 840, 860 (5th Cir. 1998) ("[A] district court abuses its discretion if it bases its decision on an error of law or a clearly erroneous assessment of the evidence.").  The defendant "bears the burden of establishing a fair and just reason for withdrawing his plea."  *Powell*, 354 F.3d at 370 (citing *Brewster*, 137 F.3d at 858).  "Allowing [a defendant] to withdraw his plea without a fair and just reason would defeat the purpose of the plea hearing and diminish the significance of entering pleas." *United States v. Grant*, 117 F.3d 788, 791 (5th Cir.

1997). In evaluating whether a defendant has met this burden, a district court in the Fifth Circuit should consider seven factors:

> (1) whether the defendant has asserted his innocence; (2) whether withdrawal would prejudice the Government; (3) whether the defendant delayed in filing the motion, and if so, the reason for the delay; (4) whether withdrawal would substantially inconvenience the court; (5) whether close assistance of counsel was available to the defendant; (6) whether the plea was knowing and voluntary; and (7) whether withdrawal would waste judicial resources.

*United States v. Daniel*, 866 F.2d 749, 751 (5th Cir. 1989) (citations omitted); *Powell*, 354 F.3d at 370 (citing *United States v. Carr*, 740 F.2d 343-44 (5th Cir. 1984)). The decision to permit or deny withdrawal of a guilty plea "is based on the totality of the circumstances," and the district court "is not required to make findings as to each of the *Carr* factors." *Powell*, 354 F.3d at 370.

Here, all of the factors to be considered under *Carr* militate in favor of denying Hardy's motion to withdraw his guilty plea.

## I.     Actual Innocence

Hardy pleaded guilty to several firearm and drug offenses, acknowledging that he committed those offense in a lengthy sworn colloquy with the Court. Hardy nowhere claims that he is innocent of the offenses to which he pleaded guilty. Nor does he cite any cases suggesting that a claim of innocence on counts that are to be dismissed as part of the negotiated plea should factor in support of a motion to withdraw a plea. Hardy pleaded guilty to the counts on which his guilt was a foregone conclusion and to which he does not assert factual innocence. This factor therefore weighs against allowing withdraw of the plea.

## II.    Prejudice to the Government

According to Hardy, the government will suffer minimal prejudice if the withdrawal is granted. Rec. Doc. 130-1 at 9. Hardy seems to suggest that the only prejudice will be having to

try the case and that this will not be difficult because the facts are "relatively fresh."

This view greatly underestimates the difficulty in reaching the plea. As the Court can imagine, this case involves several stakeholders who feel strongly about how the case should go. It was not easy for the government to bring together Arnold's family, the DEA (where Arnold was assigned as a Task Force Officer), the Jefferson Parish Sherriff's Office (where Arnold worked for many years and from where he was detailed to DEA), and the FBI (which investigated the case). The process involved numerous meetings and consultations. They were not easy or pleasant meetings, and Hardy's suggestion that the plea can be withdrawn and the case can simply be put back on for trial with no prejudice to the government is naïve.

Aside from the prejudice of losing all of the time and energy spent on the plea, the case is not as straightforward and easy to present as Hardy suggests. As made clear by the factual basis signed and affirmed by Hardy, the government's case included numerous cooperating witnesses. Several of those cooperating witnesses have been sentenced and are now held in facilities outside of New Orleans or are out of jail altogether, making their preparation more difficult. Additionally, several of the relevant police officers are no longer in the same positions and/or local and readily available to prepare for trial and appear at trial. Withdrawing the plea would mean significant additional work in preparing them to testify at trial. Finally, this matter is over three years old and is by no means "fresh."

### III.   Delay in Seeking to Withdraw

Hardy claims that he did not delay in seeking withdrawal because he pleaded guilty on August 6, 2018 and sought to withdraw on January 11, 2019. Rec. Doc. 130-1 at 9. This six-month delay is far longer than the period for defendants in other cases where the Fifth Circuit has denied motions to withdraw. In *Carr*, for example, the defendant moved to withdraw his guilty

plea only 22 days after his re-arraignment. 740 F.2d at 343. The district court denied the motion, and the Fifth Circuit affirmed, finding among other things "that the motion [to withdraw guilty plea] was not promptly filed." *Id*. at 345. Hardy's delay also eclipses that in both *United States v. Lampazianie*, 251 F.3d 519, 522 (5th Cir. 2001) (ten days), and *United States v. Adam*, 296 F.3d 329 (5th Cir. 2002) (two weeks). Further, Hardy filed his motion to withdraw only after the First Step Act passed on December 21, 2018. This shows that his desire to withdraw results from dissatisfaction with the number negotiated in light of the change in law. To grant withdrawal here would go directly against *Carr's* admonishment that withdrawal should not be used when the defendant believes he made a bad strategic decision pleading guilty. *See Carr*, 740 F.2d at 345 ("The rationale for allowing a defendant to withdraw a guilty plea is to permit him to undo a plea that was unknowingly made at the time it was entered. The purpose is not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty.").

### IV. Inconvenience to the Court

Allowing Hardy to withdraw his plea at this juncture likewise would inconvenience the Court and waste judicial resources. In the Eastern District of Louisiana, the Court's civil and criminal dockets are extremely busy and crowded. Accommodating Hardy's request would only increase that burden and the likelihood that matters involving other litigants' cases might be delayed. Additionally, the Court has expended a substantial amount of resources on this matter, which all parties and the Court believed was being resolved through entry of a guilty plea. The Court's preparation for a re-arraignment proceeding, particularly one involving such serious charges, multiple drug and gun counts, and several mandatory minimums, is extensive and detailed. The transcript of the August 6, 2018 re-arraignment proceeding is thirty-seven pages

long, in no small part because the Court devoted significant time and effort there to ensure that a knowing and voluntary plea was entered. Undersigned counsel also imagines that the Court has already spent a significant amount of time reviewing the Pre-Sentence Investigation Report and otherwise preparing for the sentencing in this matter. To allow Hardy to withdraw his guilty plea would render all of this time and effort for naught.

### V.     Assistance of Counsel

Hardy concedes that he had the assistance of learned and experienced counsel throughout this proceeding. He does not claim that he was misinformed as to the penalties in place at the time of his plea, nor as to the penalties and/or elements for the counts to which he pleaded guilty. In fact, Hardy's attorneys negotiated a deal for him to a number of years much less than the possible life sentence he would still face at trial today.

### VI.     Knowing and Voluntary Plea

Hardy acknowledges that the Court's plea colloquy was "detailed and complete." Rec. Doc. 130-1 at 10. He appears to suggest that his plea may not have been knowing and voluntary because neither "Hardy nor his counsel took note of the impending passage of the First Step Act and its enormous impact on plea and sentencing considerations." *Id*.

As an initial matter, the passage of the First Step Act was hardly "impending" at the time that Hardy entered his plea in August 2018. Proponents of criminal justice reform had little reason to believe that a Republican President who campaigned as tough on crime and a Republican Congress would pass significant criminal justice reform later in the year. This is not a situation where anyone involved in the plea negotiations had any belief that the law was going to change soon and that the plea had to go through before the law changed.[2]

---

[2] If the parties had believed the First Step Act would soon pass, it would have made little sense to push the plea through but then allow sentencing, which was originally set for November 1, 2018, to be delayed until after the passage of the

10

During the plea colloquy, the Court thoroughly and extensively questioned Hardy as to the charges, his willingness to plead guilty, whether he had been threatened or coerced in any way to plead guilty, and the factual basis supporting the guilty plea. *See* Exhibit A. The Court offered Hardy numerous opportunities during its plea colloquy to ask questions of the Court, his counsel, or the Assistant United States Attorney. Hardy's under-oath attestations that he was knowingly and voluntarily pleading guilty are deemed "solemn" by the Fifth Circuit and "carry a strong presumption of verity." *Adam*, 296 F.3d at 333. The plea was knowing and voluntary.

In addition, as discussed above, a subsequent change in the law does not render the plea any less knowing or voluntary. *See supra* Section A.

### VII.   Wasting of Judicial Resources

The arguments as to why granting withdrawal would lead to a waste of judicial resources are set forth in the "Inconvenience to the Court" section of this pleading and incorporated here.

---

First Step Act. The First Step Act's change to how multiple Section 924(c) charges "stack" does not apply to cases in which the defendant had been sentenced before the Act passed. If the parties foresaw the change as "impending," it would have been easy to insist that sentencing take place prior to passage.

## **CONCLUSION**

For the foregoing reasons, the United States of America respectfully requests that this Honorable Court deny defendant Jarvis Hardy's Motion to Withdraw Plea. Rec. Doc. 130.

    Respectfully submitted,

    PETER G. STRASSER
    UNITED STATES ATTORNEY

    /s/ Elizabeth Privitera
    ELIZABETH PRIVITERA
    Assistant United States Attorney
    650 Poydras Street, Suite 1600
    New Orleans, Louisiana 70130
    Telephone: (504) 680-3119

    /s/ David Haller
    DAVID HALLER
    Assistant United States Attorney
    650 Poydras Street, Suite 1600
    New Orleans, Louisiana 70130
    Telephone: (504) 680-3117

## **CERTIFICATE OF SERVICE**

       I hereby certify that on February 8, 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all defense counsel of record.

                                         /s/ Elizabeth Privitera
                                         ELIZABETH PRIVITERA
                                         Assistant United States Attorney